

**United States Department of Justice**

*United States Attorney*
*Southern District of West Virginia*

Robert C. Byrd United States Courthouse
300 Virginia Street, East
Suite 4000
Charleston, WV 25301

1-800-659-8726
304-345-2200
FAX: 304-345-2200

May 16, 2025

Timothy C. Carrico, Esq.
105 Capitol Street, Suite 300
Charleston, WV 25301

> Re: United States v. Sanjay Mehta, D.O.
> Criminal No. 5:25-cr-00104

Dear Mr. Carrico:

This will confirm our conversations with regard to your client, Sanjay Mehta, D.O. (hereinafter "Dr. Mehta"). As a result of these conversations, it is agreed by and between the United States and Dr. Mehta as follows:

1. **PENDING CHARGES.** Dr. Mehta is charged in nine counts of a fourth superseding indictment with a violation of 21 U.S.C. § 846 (conspiracy to distribute and dispense oxycodone); violations of 21 U.S.C. § 841(a)(1)(distribution of oxycodone) and a violation of 18 U.S.C. § 1956(h) (money laundering conspiracy).

2. **CHARGING AGREEMENT.** Dr. Mehta agrees to waive his right pursuant to Rule 7 of the Federal Rules of Criminal Procedure to be charged by indictment and will consent to the filing of a three-count information to be filed in the United States District Court for the Southern District of West Virginia, a copy of which is attached hereto as "Plea Agreement Exhibit A."

3. **RESOLUTION OF CHARGES.** Dr. Mehta will plead guilty to three violations of 21 U.S.C. § 843(a)(3) and 18 U.S.C. § 2 (aiding and abetting obtaining a controlled substance by fraud) as charged in said information. Following final disposition, the United States will move the Court to dismiss Counts 1, 6, 8, 10, 11, 30, 31, 32, and 33 of the fourth superseding indictment in Criminal No. 5:18-cr-00026 as to Dr. Mehta.

_____
Defendant's
Initials

Timothy C. Carrico, Esq.
May 16, 2025                          Re: Sanjay Mehta, D.O.
Page 2


4.  **MAXIMUM POTENTIAL PENALTY.**  The maximum penalty to which Dr. Mehta will be exposed by virtue of this guilty plea is as follows:

### Counts One through Three

(a)  Imprisonment for a period of 4 years;

(b)  A fine of $250,000, or twice the gross pecuniary gain or twice the gross pecuniary loss resulting from defendant's conduct, whichever is greater;

(c)  A term of supervised release of 1 year;

(d)  A mandatory special assessment of $100 pursuant to 18 U.S.C. § 3013; and

(e)  Restitution as may be ordered by the Court pursuant to 18 U.S.C. §§ 3663 and 3664.

### Combined Total Penalty

(a)  Imprisonment for a period of 12 years;

(b)  A fine of $750,000, or twice the gross pecuniary gain or twice the gross pecuniary loss resulting from defendant's conduct, whichever is greater;

(c)  A term of supervised release of 3 years;

(d)  A mandatory special assessment of $300 pursuant to 18 U.S.C. § 3013; and

(e)  Restitution as may be ordered by the Court pursuant to 18 U.S.C. §§ 3663 and 3664.


_____
Defendant's
Initials

Timothy C. Carrico, Esq.
May 16, 2025                                    Re: Sanjay Mehta, D.O.
Page 3

5.    **LICENSE REVOCATION.**   Dr. Mehta agrees:

(a)    To surrender his Drug Enforcement Administration
Certificate of Registration (DEA Form 223);

(b)    Not to oppose revocation of his registration to dispense
controlled substances pursuant to 21 U.S.C. § 824(a)
and 21 C.F.R. § 1301.45 on the ground that he has been
convicted of a felony relating to a controlled
substance; and

(c)    Not to apply for re-registration to dispense schedule
II controlled substances.

6.    **WAIVER OF STATUTES OF LIMITATIONS AND PRETRIAL DELAY.**
Dr. Mehta knowingly and voluntarily waives all defenses based on
the applicable statutes of limitations, and pre-indictment delay
under the Federal Rules of Criminal Procedure or the Constitution,
with respect to the charges contained in the Information.

7.    **SPECIAL ASSESSMENT.**   Prior to the entry of a plea
pursuant to this plea agreement, Dr. Mehta will tender a check or
money order to the Clerk of the United States District Court for
$300, which check or money order shall indicate on its face the
name of defendant and the case number.   The sum received by the
Clerk will be applied toward the special assessment imposed by the
Court at sentencing.   Dr. Mehta will obtain a receipt of payment
from the Clerk and will tender a copy of such receipt to the United
States, to be filed with the Court as an attachment to this plea
agreement.   If Dr. Mehta fails to provide proof of payment of the
special assessment prior to or at the plea proceeding, the United
States will have the right to void this plea agreement.   In the
event this plea agreement becomes void after payment of the special
assessment, such sum shall be promptly returned to Dr. Mehta.

_____
Defendant's
Initials

Timothy C. Carrico, Esq.
May 16, 2025                          Re: Sanjay Mehta, D.O.
Page 4


**8.    PAYMENT OF MONETARY PENALTIES.** Dr. Mehta authorizes the
Financial Litigation Program in the United States Attorney's
Office to obtain a credit report from any major credit reporting
agency prior to sentencing in order to assess his financial
condition for sentencing purposes.  Dr. Mehta agrees not to object
to the District Court ordering all monetary penalties (including
the special assessment, fine, court costs, and any restitution
that does not exceed the amount set forth in this plea agreement)
to be due and payable in full immediately and subject to immediate
enforcement by the United States.   So long as the monetary
penalties are ordered to be due and payable in full immediately,
Dr. Mehta further agrees not to object to the District Court
imposing any schedule of payments as merely a minimum schedule of
payments and not the only method, nor a limitation on the methods,
available to the United States to enforce the judgment.

Dr. Mehta authorizes the United States, through the Financial
Litigation Program, to submit any unpaid criminal monetary penalty
to the United States Treasury for offset in accordance with the
Treasury Offset Program, regardless of the defendant's payment
status or history at that time.

In addition to any payment ordered by the Court, Dr. Mehta
shall pay all monies received from any source other than earned
income, including but not limited to, lottery winnings, gambling
proceeds, judgments, inheritances, and tax refunds, toward the
court ordered restitution or fine.

Dr. Mehta agrees that if he retains counsel or has appointed
counsel in response to the United States' efforts to collect any
monetary penalty, he shall immediately notify the United States
Attorney's Office, Attention: Financial Litigation Program, 300
Virginia Street E., Suite 4000, Charleston, West Virginia 25301,
in writing and shall instruct his attorney to notify FLP
immediately of his representation.


_____
Defendant's
Initials

Timothy C. Carrico, Esq.
May 16, 2025                        Re: Sanjay Mehta, D.O.
Page 5

**9.  COOPERATION.**  Dr. Mehta will be forthright and truthful with this office and other law enforcement agencies with regard to all inquiries made pursuant to this agreement, and will give signed, sworn statements and grand jury and trial testimony upon request of the United States.  In complying with this provision, Dr. Mehta may have counsel present except when appearing before a grand jury.  Further, Dr. Mehta agrees to be named as an unindicted co-conspirator and unindicted aider and abettor, as appropriate, in subsequent indictments or informations.

**10.  USE IMMUNITY.**  Unless this agreement becomes void due to a violation of any of its terms by Dr. Mehta, and except as expressly provided for in paragraph 12 below, nothing contained in any statement or testimony provided by him pursuant to this agreement, or any evidence developed therefrom, will be used against him, directly or indirectly, in any further criminal prosecutions or in determining the applicable guideline range under the Federal Sentencing Guidelines.

**11.  LIMITATIONS ON IMMUNITY.**  Nothing contained in this agreement restricts the use of information obtained by the United States from an independent, legitimate source, separate and apart from any information and testimony provided pursuant to this agreement, in determining the applicable guideline range or in prosecuting Dr. Mehta for any violations of federal or state laws. The United States reserves the right to prosecute Dr. Mehta for perjury or false statement if such a situation should occur pursuant to this agreement.

**12.  STIPULATION OF FACTS AND WAIVER OF FED. R. EVID. 410.** The United States and Dr. Mehta stipulate and agree that the facts comprising the offenses of conviction include the facts outlined in the "Stipulation of Facts," a copy of which is attached hereto as "Plea Agreement Exhibit B."

Dr. Mehta agrees that if he withdraws from this agreement, or this agreement is voided as a result of a breach of its terms by him, and he is subsequently tried for his conduct alleged in the



Defendant's
Initials

Timothy C. Carrico, Esq.
May 16, 2025                          Re: Sanjay Mehta, D.O.
Page 6


information and the fourth superseding indictment, as more
specifically described in the Stipulation of Facts, the United
States may use and introduce the Stipulation of Facts in the United
States case-in-chief, in cross-examination of Dr. Mehta or of any
of his witnesses, or in rebuttal of any testimony introduced by
him or on his behalf. Dr. Mehta knowingly and voluntarily waives,
see United States v. Mezzanatto, 513 U.S. 196 (1995), any right he
has pursuant to Fed. R. Evid. 410 that would prohibit such use of
the Stipulation of Facts. If the Court does not accept the plea
agreement through no fault of the defendant, or the Court declares
the agreement void due to a breach of its terms by the United
States, the Stipulation of Facts cannot be used by the United
States.

     The United States and Dr. Mehta understand and acknowledge
that the Court is not bound by the Stipulation of Facts and that
if some or all of the Stipulation of Facts is not accepted by the
Court, the parties will not have the right to withdraw from the
plea agreement.

     **13. AGREEMENT ON SENTENCING GUIDELINES.** Based on the
foregoing Stipulation of Facts, the United States and Dr. Mehta
agree that the following provisions of the United States Sentencing
Guidelines apply to this case.

          **COUNTS ONE THROUGH THREE**

          **USSG §2D2.2**
          Base offense level                          8

          **USSG §3B1.3**
          Abuse of Position of Trust or
          Or Use of Special Skill              + 2

     The United States and Dr. Mehta have reached no agreement on
the application of any other guideline section and both Dr. Mehta
and the United States reserve the right to argue for a departure
and/or variance from the advisory guideline level. The United

                                        _____
                                        Defendant's
                                        Initials

Timothy C. Carrico, Esq.
May 16, 2025                          Re: Sanjay Mehta, D.O.
Page 7


States and Dr. Mehta acknowledge and understand that the Court and
the Probation Office are not bound by the parties' calculation of
the United States Sentencing Guidelines set forth above and that
the parties shall not have the right to withdraw from the plea
agreement due to a disagreement with the Court's calculation of
the appropriate guideline range.

14. **RULE 11(c)(1)(C) AGREEMENT.** Pursuant to Rule 11(c)(1)(C)
of the Federal Rules of Criminal Procedure, the United States and
Dr. Mehta agree that the appropriate disposition of this case is
for the sentences of imprisonment for the offenses of conviction
(Counts One through Three of the Information) to run consecutive
to each other. Dr. Mehta understands that this agreement pursuant
to Fed. R. Crim. P. 11(c)(1)(C) is not binding on the District
Court unless and until the District Court accepts this plea
agreement. If the Court refuses to accept this plea agreement, Dr.
Mehta has the right to void this agreement and may withdraw his
guilty plea.

15. **WAIVER OF APPEAL AND COLLATERAL ATTACK.** Dr. Mehta
knowingly and voluntarily waives his right to seek appellate review
of his conviction and of any sentence imposed by the District
Court, including any term of imprisonment, fine, term or condition
of supervised release, term or condition of probation, or special
assessment, or the manner in which the sentence was determined, on
any ground whatsoever including any ground set forth in 18 U.S.C.
§ 3742(a), except that the defendant may appeal any sentence that
exceeds the maximum penalty prescribed by statute. Dr. Mehta also
knowingly and voluntarily waives any right to seek appellate review
of any claim or argument that (1) the statutes of conviction, 21
U.S.C. § 843(a)(3) and 18 U.S.C. § 2, are unconstitutional, and
(2) Dr. Mehta's conduct set forth in the Stipulation of Facts (Plea
Agreement Exhibit B) does not fall within the scope of 21 U.S.C.
§ 843(a)(3) and 18 U.S.C. § 2.

The United States also agrees to waive its right to appeal
any sentence imposed by the District Court, or the manner in which
the sentence was determined, on any ground whatsoever, including

_____
Defendant's
Initials

Timothy C. Carrico, Esq.
May 16, 2025                          Re: Sanjay Mehta, D.O.
Page 8


any ground set forth in 18 U.S.C. § 3742(b), except that the United States may appeal any sentence of imprisonment that deviates from the sentence agreed upon pursuant to Fed. R. Crim. P. 11(c)(1)(C) as set forth in Paragraph 14 above or that is below the minimum penalty, if any, prescribed by statute.

    Dr. Mehta also knowingly and voluntarily waives the right to challenge his guilty plea and conviction resulting from this plea agreement, and any sentence imposed for the conviction, in any collateral attack, including but not limited to a motion brought under 28 U.S.C. § 2255.

    The waivers noted above shall not apply to a post-conviction collateral attack or direct appeal based on a claim of ineffective assistance of counsel.

    **16.  WAIVER OF FOIA AND PRIVACY RIGHT.**  Dr. Mehta knowingly and voluntarily waives all rights, whether asserted directly or by a representative, to request or receive from any department or agency of the United States any records pertaining to the investigation or prosecution of this case, including without any limitation any records that may be sought under the Freedom of Information Act (FOIA), 5 U.S.C. § 552, or the Privacy Act of 1974, 5 U.S.C. § 552a, following final disposition.

    **17.  FINAL DISPOSITION.**  The matter of sentencing is within the sole discretion of the Court. The United States has made no representations or promises as to a specific sentence.  The United States reserves the right to:

    (a)  Inform the Probation Office and the Court of all relevant facts and conduct;

    (b)  Present evidence and argument relevant to the factors enumerated in 18 U.S.C. § 3553(a);

    (c)  Respond to questions raised by the Court;


_____
Defendant's
Initials

Timothy C. Carrico, Esq.
May 16, 2025                          Re: Sanjay Mehta, D.O.
Page 9

     (d)   Correct inaccuracies or inadequacies in the presentence report;

     (e)   Respond to statements made to the Court by or on behalf of Dr. Mehta;

     (f)   Advise the Court concerning the nature and extent of Dr. Mehta's cooperation; and

     (g)   Address the Court regarding the issue of Dr. Mehta's acceptance of responsibility.

**18.   VOIDING OF AGREEMENT.**   If either the United States or Dr. Mehta violates the terms of this agreement, the other party will have the right to void this agreement. If the Court refuses to accept this agreement, it shall be void.

**19.   ENTIRETY OF AGREEMENT.**   This written agreement constitutes the entire agreement between the United States and Dr. Mehta in this matter.   There are no agreements, understandings or recommendations as to any other pending or future charges against Dr. Mehta in any Court other than the United States District Court for the Southern District of West Virginia.

Acknowledged and agreed to on behalf of the United States:

LISA G. JOHNSTON
Acting United States Attorney

By:

JENNIFER RADA HERRALD
Assistant United States Attorney

_____
Defendant's
Initials

Timothy C. Carrico, Esq.
May 16, 2025                          Re: Sanjay Mehta, D.O.
Page 10

I hereby acknowledge by my initials at the bottom of each of the foregoing pages and by my signature on the last page of this 10-page agreement that I have read and carefully discussed every part of it with my attorney, that I understand the terms of this agreement, and that I voluntarily agree to those terms and conditions set forth in the agreement. I further acknowledge that my attorney has advised me of my rights, possible defenses, the Sentencing Guideline provisions, and the consequences of entering into this agreement, that no promises or inducements have been made to me other than those in this agreement, and that no one has threatened me or forced me in any way to enter into this agreement. Finally, I am satisfied with the representation of my attorney in this matter.

_____          _____
Sanjay Mehta, D.O.                        Date Signed
Defendant

_____          _____
Timothy C. Carrico, Esq.                  Date Signed
Counsel for Defendant

UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF WEST VIRGINIA
BECKLEY

UNITED STATES OF AMERICA

v.

CRIMINAL NO. _____

21 U.S.C. § 843(a)(3)
18 U.S.C. § 2

SANJAY MEHTA, D.O.

## I N F O R M A T I O N

The United States Attorney Charges:

### COUNTS ONE THROUGH THREE

1.  At all relevant times, defendant SANJAY MEHTA, D.O., was a licensed physician who held a West Virginia medical license. Defendant SANJAY MEHTA, D.O., was authorized to prescribe controlled substances for a legitimate medical purpose in the usual course of professional medical practice and within the bounds of medical practice.

2.  Defendant SANJAY MEHTA, D.O., worked as a physician for HOPE Clinic in Beckley, Raleigh County, West Virginia, from in or about November 2012 through June 2015.

3.  On or about the dates listed below, each date constituting a separate count, at or near the locations listed below, within the Southern District of West Virginia, persons known to the United States Attorney, aided and abetted by defendant

SANJAY MEHTA, D.O., knowingly and intentionally acquired and obtained possession of a controlled substance by misrepresentation, fraud, forgery, deception and subterfuge.

| COUNT | DATE | LOCATION | KNOWN PERSON |
|-------|------|----------|--------------|
| ONE | May 14, 2013 | Beckley, Raleigh County, West Virginia | T.P.G. |
| TWO | July 29, 2013 | Gilbert, Mingo County, West Virginia | J.B. |
| Three | August 7, 2013 | Oak Hill, Fayette County, West Virginia | C.R. |

In violation of Title 21, United States Code, Section 843(a)(3), and Title 18, United States Code, Section 2.

UNITED STATES OF AMERICA

LISA G. JOHNSTON
Acting United States Attorney

By: _____
JENNIFER RADA HERRALD
Assistant United States Attorney

**PLEA AGREEMENT EXHIBIT A**
2

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
BECKLEY

UNITED STATES OF AMERICA

v.                                    CRIMINAL NO. 5:25-cr-00104

SANJAY MEHTA, D.O.


### STIPULATION OF FACTS

The United States and SANJAY MEHTA, D.O. (hereinafter "defendant," "me," "I," or "my"") stipulate and agree that the facts comprising the offenses of conviction in the single-count Information in the Southern District of West Virginia, include the following:

### Overview

The Beckley HOPE Clinic was located at 404 Carriage Drive, Beckley, Raleigh County, West Virginia, and the Beaver HOPE Clinic was located at 106 Lockheed Drive, Beaver, Raleigh County, West Virginia. Sanjay Metha, D.O., worked at the Beckley HOPE Clinic from November 2012 through July 2013 and the Beaver HOPE Clinic location from August 2013 through May 2015. As detailed below, many of the prescriptions defendant Mehta and his co-defendant practitioners wrote for HOPE Clinic customers were illegal, as they were not for a legitimate medical purpose in the usual course of professional medical practice and were beyond the bounds of medical practice. The prescriptions Mehta and his co-defendant practitioners wrote for HOPE Clinic customers were not for legitimate medical reasons in the usual course of professional medical practice and were beyond the bounds of medical practice because, among other reasons, the charts did not contain appropriate medical records justifying the treatment with opioids, the doctors did not discuss other treatments for pain besides opioids, and the doctors ignored or overlooked clear signs of abuse, addiction, and diversion, all of which fell so far below the standard of medical practice generally recognized and accepted in the professional medical community as to make the prescriptions illegal.

The HOPE Clinic received payments from these customers, and defendant Mehta, along with other co-defendant practitioners and HOPE Clinic employees, received bonuses from funds resulting from the customer payments, based upon the monthly profit from the number of customers who visited and paid each month. These bonuses promoted the conspiracy to distribute controlled substances not for legitimate medical purposes in the usual course of professional medical practice and beyond the bounds of medical practice.

Distribution of Controlled Substances Not
For Legitimate Medical Purposes in the
Usual Course of Professional Medical Practice and
Beyond the Bounds of Medical Practice

James Blume, D.O., owned the HOPE Clinic and contracted Mark Radcliffe as the practice manager to run the daily operations of the HOPE Clinic. Mark Radcliffe owned and operated PPPFD, which purportedly functioned to allow doctors to safely and legally prescribe opioids, such as oxycodone, to customers and to allow pharmacies to safely dispense those opioids by weeding out alleged "diverters" of opioid prescriptions who, among other things:

- sought prescriptions from multiple doctors,
- abused opioids and other drugs, and
- illegally sold their opioid prescriptions to other individuals.

While James Blume was a licensed medical doctor, Mark Radcliffe was not a licensed medical professional. James Blume and Mark Radcliffe recruited Mehta to work at the HOPE Clinic despite Mehta having little to no experience in dealing with chronic pain patients and no training in prescribing schedule II narcotics for the treatment of chronic pain. Mark Radcliffe explained to Mehta that narcotics auditors employed by PPPFD, who were "former DEA Agents," would screen customers for abuse, addiction, and diversion prior to the customer ever seeing him.

In approximately November 2012, Mehta began working at the Beckley HOPE Clinic. Mehta understood at the time he was contracted that the purpose of HOPE Clinic was to provide pain customers with oral opiate pain medicine. As Mark Radcliffe and James Blume knew, however, Mehta had no background or specialized training in chronic pain management.

**PLEA AGREEMENT EXHIBIT B**
2

Throughout his work at HOPE Clinic, Mehta understood through his interactions, conversations, and correspondence with James Blume, Mark Radcliffe, PPPFD employees, and other doctors at HOPE Clinic, that the main purpose of HOPE Clinic was to provide opioid prescriptions on a monthly basis to customers visiting HOPE Clinic.

At Mark Radcliffe's direction, PPPFD employees interviewed each customer on a monthly basis and took their vital signs. Sometimes PPPFD employees performed drug screens to ascertain (1) whether customers were taking their medications as prescribed, or (2) whether customers were using other controlled substances without a prescription or (3) whether customers were using illicit controlled substances. However, customers' drug screen failures seldom affected whether Mehta and other HOPE Clinic doctors continued to prescribe Schedule II narcotics.

Mehta was the primary physician at the Beckley and Beaver location of the HOPE Clinic from November 2012 through May 2015. At a customer's initial visit, Mehta or one of his co-defendant practitioners met with the customer. A customer usually received a monthly prescription for opioids at his or her initial visit, frequently without regard to whether the customer's conditions or initial examination medically justified the prescription of Schedule II narcotics.

For a customer to receive additional prescriptions, Mark Radcliffe and PPPFD required the customer to return to HOPE Clinic every 28 days and pay a fee. Pursuant to guidelines established by Mark Radcliffe, customers typically only met with non-medical PPPFD staff on the customers' second and third visits to HOPE Clinic to receive opioid prescriptions, but customers were required to pay the same fee regardless of whether they saw a physician or non-medical PPPFD staff. Generally, Mehta only encountered HOPE Clinic customers once every three visits to the clinic. During customers' return visits, Mehta typically either performed cursory examinations or performed no examinations. As he and the other doctors at HOPE Clinic knew, Mehta and the other doctors at HOPE Clinic did not create any meaningful treatment plans for customers. Generally, there was no documentation in customer charts that Mehta discussed or reviewed prior treatments with customers; discussed or reviewed alternative treatments with customers such as physical therapy, chiropractor, or trigger point injections; discussed the benefits and risks of opioids; or discussed long-term goals with customers other than prescribing opioids.

**PLEA AGREEMENT EXHIBIT B**

3

While Dr. Mehta worked for the HOPE Clinic, he was a temporary employee hired by an outside company that supplied doctors to the HOPE Clinic on a contract basis. Mehta was paid an hourly rate by the outside company. In addition to his hourly pay, Mehta received bonuses, paid by James Blume, based on the number of paying customers at the HOPE Clinic. Some months, Mehta's bonus exceeded his hourly pay.

Whether Mehta examined the customers or whether customers only met with non-medical PPPFD employees, Mehta signed customers' opioid prescriptions for Schedule II narcotics. The prescriptions commonly were for oxycodone and oxycodone-based narcotics such as Percocet, Roxicodone, and Endocet. Mehta wrote these prescriptions at times even after customers' drug screened positive for other controlled substances the customers were not prescribed, or even after customers' drug screened negative for prescribed medications by the HOPE Clinic.

## Defendant's Factual Basis for Offenses of Conviction

From 2012 through 2015, I was a licensed physician in West Virginia. I started working at the HOPE Clinic in Beckley and Beaver, Raleigh County, West Virginia, during this time period. As a physician, I was authorized to write prescriptions for controlled substances, so long as the prescription was for a legitimate medical purpose in the usual course of professional medical practice and within the bounds of medical practice.

On May 14, 2013, I was working at the Hope Clinic in Beckley. I signed prescriptions for a customer ("T.P.G.") for 68 oxycodone 30 mg and 135 Methadone 5 mg pills. I knew these prescriptions were not for a legitimate medical purpose in the usual course of professional medical practice. T.P.G. had taken nine drug screens while a customer at HOPE Clinic and had failed eight of them. T.P.G. tested positive for cocaine, non-prescribed methadone, non-prescribed hydrocodone, non-prescribed alprazolam, non-prescribed clonazepam, and other non-prescribed substances. During his April 2013 appointment, T.P.G. admitted to taking Xanax that his mother provided him following his brother's recent death and reported that his pain medication had been stolen. Despite these red flags, I continued to provide T.P.G. with prescriptions for Schedule II controlled substances. At no time did I discuss the failed drug screen results with T.P.G., nor did I discuss with him the possibility of addiction and the need for addiction treatment. The file did not document any discussion between me and T.P.G., or any other medical professional and T.P.G., about his abnormal drug screens or the possibility of addiction. Importantly, the medical

**PLEA AGREEMENT EXHIBIT B**
4

records in the chart did not support the initial prescription for pain medicine nor any of the subsequent prescriptions for pain medicine.

On May 14, 2013, T.P.G. filled the prescriptions I wrote for oxycodone at a pharmacy in Beckley, Raleigh County, West Virginia, within the Southern District of West Virginia. T.P.G died on May 17, 2013, as a result of opioid intoxication.

On July 29, 2013, I was working at the Hope Clinic in Beaver. I signed prescriptions for customer J.B. for 90 oxycodone 30 mg pills and 60 oxycodone 15 mg pills. I knew these prescriptions were not for a legitimate medical purpose in the usual course of professional medical practice. J.B. had been a customer of the HOPE Clinic since October 25, 2012. From October 25, 2012, through July 29, 2013, she was given three drug tests and failed all three by testing positive for alprazolam, nordiazepam, oxazepam, and hydrocodone. J.B. further failed to respond to a call for a pill count. Despite these red flags, J.B. was listed as a "moderate" risk of diversion, and I continued to provide J.B. with prescriptions for Schedule II controlled substances. At no time did I discuss the failed drug screen results with J.B., nor did I discuss with her the possibility of addiction and the need for addiction treatment. The file did not document any discussion between me and J.B., or any other medical professional and J.B., about her abnormal drug screens or the possibility of addiction. Importantly, the medical records in the chart did not support the initial prescription for pain medicine nor any of the subsequent prescriptions for pain medicine.

On July 29, 2013, J.B. filled the prescriptions I wrote for oxycodone at a pharmacy in Gilmer, Mingo County, West Virginia, within the Southern District of West Virginia. J.B. died on August 3, 2013, as a result of opioid intoxication.

On August 7, 2013, while working at the HOPE Clinic in Beaver, Raleigh County, West Virginia, I signed prescriptions for customer C.R. for 150 Roxicodone 30 mg and 90 Roxicodone 15 mg pills. I knew these prescriptions were not for a legitimate medical purpose in the usual course of professional medical practice. C.R. had failed two drug screens for being positive for non-prescribed hydrocodone. In fact, the drug screen taken from C.R. during her July 10, 2013 visit, was positive for non-prescribed hydrocodone but I did not address or acknowledge that failure at her August 7, 2013 visit. In fact, despite failing a second drug test for non-prescribed hydrocodone, C.R. was allowed to skip her doctor visit on August 7, 2013, and I issued her the Roxicodone prescriptions

**PLEA AGREEMENT EXHIBIT B**
5

without meeting with her, examining her, or discussing her abnormal drug screens with her. A review of C.R.'s chart shows that there are no medical records to support her claimed injuries and nothing in the chart to support the initial prescription for pain medicine nor any of the subsequent prescriptions for pain medicine. In total, C.R. was given five drug screens while a customer at HOPE Clinic and she failed four of them. Despite these failures, C.R. continued to received prescriptions for oxycodone and, in fact, received increases in her medication that were not medically supported.

On August 7, 2013, C.R. filled the prescriptions I wrote for Roxicodone at a pharmacy in Oak Hill, Fayette County, West Virginia. C.R. has admitted that she used some of the Roxicodone pills, provided some to her daughter, and sold some of the pills for profit. C.R. further admitted that she was addicted to the pills from the HOPE Clinic. She further admitted that she had previously spent time in prison for cocaine distribution.

This Stipulation of Facts does not contain each and every fact known to defendant and to the United States concerning his involvement and the involvement of others in the charges set forth in the Information.

Stipulated and agreed to:

_____

SANJAY MEHTA, D.O.
Defendant

_____  Date  5/18/25

_____

TIMOTHY C. CARRICO
Counsel for Defendant

_____  Date  5/18/25

_____

JENNIFER RADA HERRALD
Assistant United States Attorney

_____  Date  5/30/25

**PLEA AGREEMENT EXHIBIT B**

6